UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

\_\_\_\_\_

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE CO., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:06-cv-812 |
| v. | ) ) | Honorable Joseph G. Scoville |
| MARKEL AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | **OPINION** |

This is an insurance dispute falling within this court's diversity jurisdiction. 28 U.S.C. § 1332(a). Plaintiff, Liberty Mutual Insurance Company, provided homeowner's insurance coverage to Lindsey Cavanaugh. Cavanaugh operated a Sea-Doo watercraft on August 1, 2003, causing personal injury to Lindsay Davis. Davis sued Cavanaugh, who was defended by Liberty Mutual in the tort action. During the pendency of that action, Liberty Mutual brought this declaratory judgment action against Markel American Insurance Company, which had issued a watercraft liability policy to the owner of the Sea-Doo, Mark Hoofman. The declaratory judgment action, instituted in the Muskegon County Circuit Court, was removed by defendant to this court on the basis of diversity of citizenship and amount in controversy.

In this declaratory judgment action, Liberty Mutual seeks a declaration that Lindsey Cavanaugh was an "insured person" under the terms of the Markel American watercraft liability policy and that Markel American therefore is obliged to reimburse Liberty Mutual for its pro rata

share of any recovery awarded to Lindsey Cavanaugh, as well as for a portion of attorney's fees and defense costs.  Markel American denies liability, on the ground that Lindsey Cavanaugh was not an "insured person" within the meaning of the watercraft liability policy.  The parties have consented to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(C), and both parties have moved for summary judgment.  At a hearing conducted on August 9, 2007, both attorneys agreed that the underlying facts are not in dispute, and that this case presents only issues of contract interpretation and other questions of law for the court.  Upon review of the record and the submissions of the parties, the court concludes that Lindsey Cavanaugh was not an insured person under the Markel American policy and that defendant is entitled to judgment in its favor.

### Findings of Fact

The following facts are beyond genuine issue.

1.      At all relevant times, Mark Hoofman was the owner of two Sea-Doo watercraft, with identification numbers ZZN28988L001 and ZZN25782A101.  Mr. Hoofman had purchased the watercraft in July 2003, two or three weeks before the accident.  (Mark Hoofman Dep. at 4-10).

2.      On July 16, 2003, defendant Markel American Insurance Company, acting through an authorized insurance agency, issued a watercraft insurance policy in favor of Mark Hoofman, covering the two Sea-Doo watercraft.  (*See* Watercraft Policy, docket # 20, Ex. B).

3.      The watercraft policy defines the term "insured person" as follows:

**Insured Person**
means you, a household member related to you by blood, marriage, adoption including a ward or foster child or any person operating your insured property with your prior permission.

(Watercraft Policy at 2).

   4.  The watercraft policy defines "you" as follows:

**You and Your**
means the insured named on the Declarations Page and the spouse if living in the
same household.

(Watercraft Policy at 2).

   5.  Under the liability coverage provisions of the watercraft policy, defendant
agreed to "pay damages for bodily injury or property damage for which any Insured Person becomes
liable through ownership, maintenance, or use of the Insured Property."  In the same paragraph,
defendant agreed to settle or defend any claim or suit seeking such damages.  (*Id.* at 7).

   6.  Mr. Hoofman's household included seven children or stepchildren, most of
whom were old enough to drive.  Mr. Hoofman's "standing rule" with regard to use of the Sea-Doos
was that his children, if old enough to drive, had free use of the watercraft and could drive them.
"Friends could ride, but not drive, that was the rule."  (Mark Hoofman Dep. at 7-8).  In other words,
friends of his children could "go as passengers and passengers only."  (*Id.* at 8).  There is no evidence
in the record to the contrary.

   7.  On August 1, 2003, Mr. Hoofman's teenaged son Jordan Hoofman and four
friends were using both Sea-Doos in Mona Lake and Lake Michigan.  (Jordan Hoofman Dep. at 5-6).
Two of his friends were Lindsay Davis and Lindsey Cavanaugh.  The teenagers each took turns
driving the Sea-Doos.  (*Id.* at 7-8).  Jordan allowed his friends to drive the Sea-Doos contrary to his
father's instructions.  (*Id.* at 19-20).

   8.  On August 1, 2003, Mark Hoofman did not know that the Sea-Doos were
being used by Jordan and his friends; Mark Hoofman was probably at work at the time.  (Mark

Hoofman Dep. at 5). Mr. Hoofman did not know Lindsey Cavanaugh, and there is no evidence that

Mark Hoofman gave Lindsey Cavanaugh permission to use the watercraft at any time.  (Mark

Hoofman Dep. at 8-9).

       9.     While Lindsey Cavanaugh was operating the Sea-Doo with hull number

ZZN28988L001 and returning it towards shore, she struck Lindsay Davis, who was standing in the

water near the shore.  Davis suffered a broken right arm and was required to undergo surgery.

       10.    On March 24, 2006, Lindsay Davis brought suit against Lindsey Cavanaugh

and Mark Hoofman[1] in the Muskegon County Circuit Court (case no. 06-4434-NO) to recover for

personal injuries incurred in the August 1, 2003 accident.

       11.    Plaintiff, Liberty Mutual Life Insurance Company, is the homeowner's insurer

for Lindsey Cavanaugh under Policy No. H32-248-532658-002 issued to Gregory and Elizabeth

Cavanaugh.  (Ex. I to Deft. Brief, docket # 20).  Plaintiff defended Cavanaugh in the Muskegon

County lawsuit brought by Lindsay Davis for personal injury.

       12.    Liberty Mutual brought the present declaratory judgment action against

Markel American Insurance Company by complaint filed in the Muskegon County Circuit Court on

October 16, 2006.  By notice of removal filed November 9, 2006, defendant removed the action to

this court, on the basis of complete diversity of citizenship and requisite amount in controversy.  At

the time this declaratory judgment action was removed, the personal injury action against plaintiff's

---

[1] Shortly before being sued in the state court, Mark Hoofman brought a federal action in admiralty seeking exoneration pursuant to the Limitation of Ship Owner's Liability Act, 46 U.S.C. §§ 183-184.  *In re Mark T. Hoofman*, case no. 1:06-cv-148 (W.D. Mich.).  On October 30, 2006, Judge Brenneman entered a Judgment of Exoneration, declaring that Mark Hoofman was not liable for loss or injury arising from the August 1, 2003 accident.  The state-court tort action against Mr. Hoofman was subsequently dismissed with prejudice as a result of the federal judgment, but the case remained pending against Lindsey Cavanaugh.

insured, Lindsay Cavanaugh, was pending and unresolved in the Muskegon County Circuit Court. At the time of removal, the amount in controversy in this action, exclusive of interest and costs, could reasonably have exceeded $75,000.00.

13.     On June 4, 2007, the parties in the personal injury action accepted a case evaluation of award of $125,000.00.  In this lawsuit, plaintiff seeks to impose upon defendant liability for its pro rata share of this amount, plus costs of defense in the personal injury action.

## Discussion

The parties agree that this case turns on the question whether Lindsey Cavanaugh is an "insured person" under defendant's watercraft policy.  Whether Cavanaugh is an insured person depends on whether she was operating the insured Sea-Doo with the "prior permission" of Mark Hoofman or his spouse at the time of the accident.  (*See* Watercraft Policy at 2).  As the facts underlying this issue are undisputed, the parties agree that the only remaining question involves contract interpretation by the court.

In cases falling within its diversity jurisdiction, the district court is to apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the district court is located.  *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).  It is undisputed that Michigan law applies to all substantive aspects of this case.  Therefore, the question of contract interpretation is governed by the substantive law of the State of Michigan.  Recent decisions of the Michigan Supreme Court make it clear that Michigan law considers an insurance policy to be a contract, subject to the general rules of interpretation that apply to all other contracts.  *See, e.g., Rory v.*

-5-

*Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005); *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003); *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447 (Mich. 2003). In this series of cases, the Michigan Supreme Court has made clear its rejection of "special rules" of construction applicable only to insurance contracts. "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory*, 703 N.W.2d at 26. The ultimate objective in construing an insurance policy, as with any other contract, is to ascertain the intent of the parties. *Klapp*, 663 N.W.2d at 457. To determine the parties' intent, the court must first examine the language of the contract, "giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie*, 664 N.W.2d at 780. Where a contract is unambiguous, it is not open to judicial construction and must be enforced as written. *Rory*, 703 N.W.2d at 31. A contract is ambiguous only when its words may reasonably be understood in different ways. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999).

In the present case, the insurance policy is clear and unambiguous with regard to those persons who are deemed to be an "insured person" under the policy. Although the named insured is Mark Hoofman, other persons are included within the definition of "insured person" by reason of the "omnibus clause" on page 2 of the watercraft policy. An "omnibus clause" will ordinarily define the term "insured" to include not only the named insured, but also members of the household and any other person using the covered property with the permission of the named insured. *See generally* 8 Couch on Insurance 3d § 111:1 (2005).[2] To be considered an insured person under the omnibus

---

[2] Michigan law requires automobile insurers to include within their policies an omnibus clause covering additional insureds. Mich. Comp. Laws § 257.520(2). The statutes covering watercraft insurance, however, contain no such requirement. Consequently, interpretation of the omnibus clause in the present case is governed purely by contract interpretation principles, with no statutory overlay.

-6-

clause of the Markel American policy, a person must be operating the watercraft with the "prior permission" of either the named insured or that person's spouse.  This policy provision is clear and unambiguous.  "Permission" is commonly defined as the "act of permitting; formal consent; authorization; leave; license or liberty granted."  *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1934).  Addition of the word "prior" serves to require that the permission be granted before the person operates the watercraft.

Obviously, permission may be express or implied.  *See Farmer v. Fidelity & Cas. Co. of N.Y.*, 249 F.2d 185, 187 (4th Cir. 1957) (applying North Carolina Law); *Taylor v. Allstate Ins. Co.*, 176 N.W.2d 266, 269-70 (Minn. 1970).  Express permission has been defined as permission "of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference."  *Nautilus Ins. Co. v. I-70 Used Cars, Inc.*, 154 S.W.3d 521, 529 (Mo. Ct. App. 2005).  The record is devoid of evidence that would support a finding that Mr. Hoofman (or his spouse) ever gave express permission to Lindsey Cavanaugh to operate either one of the family's Sea-Doos.  Indeed, it is undisputed that Mr. Hoofman did not even known Lindsey Cavanaugh.  Similarly, the record could not support a finding of implied permission.  Implied permission is "not verbally expressed, but provable by circumstantial evidence."  *Id.*  Implied permission may be inferred from all the facts and circumstances of the case, *Taylor*, 176 N.W.2d at 269-70, and therefore can arise in a myriad of situations.  For example, an owner's knowing acquiescence in a third-party's use of a vehicle over time can provide circumstantial evidence of implied permission. *See Nautilus Ins.*, 154 N.W.2d at 529.  In the present case, however, no such evidence exists.  Mark Hoofman owned the Sea-Doos for only two or three weeks, and there is no evidence that in this short time he ever implicitly consented to their operation by anyone other than his own family members.

-7-

In fact, the evidence is clear that Mr. Hoofman had a "standing rule" against operation of the Sea-Doos by his children's friends.  In these circumstances, the majority rule in this country is against a finding of permission under an omnibus clause.[3]  A leading treatise summarizes the rule as follows:

> On the theory that a prohibition against delegation is a restriction upon the use of the vehicle, if the owner of the car expressly forbids the permittee to lend his or her car to another, but the permittee nevertheless allows a second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving, since the original permittee lacks the requisite permission to bring the second permittee within the omnibus coverage.

8 COUCH, § 112:61.  Numerous decisions support this formulation of the rule.  *See, e.g., Wolverine Ins. Co. v. Eldridge*, 326 F.2d 748, 451 (7th Cir. 1964) (applying Illinois law); *Farmer*, 249 F.2d at 188-89.  Many of the cases decided in this area are directly on point, as they involve a grant by parent to a child of permission to use the family automobile, with a prohibition against allowing friends to use the car.  Again, the majority rule is against coverage under an omnibus clause of insurance policies:

> Where permission is granted to a child to use the car in a particular trip, but to let no one else drive the car, the consent is not an all comprehensive consent to any use of the car, and another person who drives on the trip with the child's permission is not an additional insured within the omnibus clause.

8 COUCH, § 112:52.  Again, numerous cases in this country follow this rule.  *See, e.g., Nationwide Mut. Ins. Co. of Shanklin*, 197 F. Supp. 2d 1338, 1342-43 (M.D. Ala. 2002) (under Alabama law, where insured was not aware that daughter, a permitted user of insured vehicle, was letting others

---

[3] Virtually all cases in this area involve automobile, not watercraft, insurance.  Both parties have cited automobile insurance cases in support of their positions.  This court concludes that automobile cases are instructive in this area and that most courts would apply the same rules to watercraft insurance.

operate the vehicle and had expressly restricted her authority, friend of daughter was not an insured person under omnibus clause); *United Farm Bureau Mut. Ins. Co. v. Ludwig*, 744 N.E.2d 1061, 1063-64 (Ind. Ct. App. 2001) (boyfriend of named insured's daughter was not covered under omnibus clause of policy, where daughter gave boyfriend permission to drive insured's car, but insured did not); *State Farm Mut. Auto Ins. Co. v. Ragatz*, 571 N.W.2d 155, 158-59 (S.D. 1997) (insured did not give implied permission to son's friend to drive automobile, in light of insured's longstanding prohibition against third-party use) (collecting cases); *Shelter Mut. Ins. Co. v. LittleJim*, 927 F.2d 1132, 1134-35 (10th Cir. 1991).  The Sixth Circuit, applying Tennessee law, has followed the majority rule.  *See Royal Indem. Co. v. Clingan*, 364 F.2d 154, 156 (6th Cir. 1966).

Although the Michigan courts have not opined in this area, there is every reason to believe that they would follow the vast weight of authority in this country and deny coverage in the circumstances of this case.  Those courts that follow the minority rule generally do so because the omnibus clause in the policy is required by statute and therefore presume that the Legislature intended a liberal application of the law.  *See, e.g., Allstate Ins. Co. v. Jensen*, 788 P.2d 340, 341-43 (N.M. 1990); *Liberty Mut. Ins. Co. v. Thomas*, 971 S.W.2d 244, 247 (Ark. 1998).  As noted above, watercraft liability insurance is not mandatory in Michigan and Michigan law does not require an omnibus clause in a watercraft policy.  Consequently, in Michigan the only issue is the intent of the contracting parties, not the intent of the Legislature.  Because Michigan law does not impose upon insurers liability for risks that the policy does not fairly assume, *see Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999).  I conclude that the Michigan courts would follow the majority rule against coverage.

Plaintiff nevertheless argues that the Michigan courts would imply the existence of "permission" in the facts of this case by analogy to cases decided under the owner's liability statute. Michigan statutory law imposes upon the owner of personal watercraft liability for injuries occasioned by the negligent operation of the watercraft, if "the personal watercraft is being used with his or her express or implied consent." MICH. COMP. LAWS § 324.80207. The statute rebuttably presumes the presence of consent if the watercraft is driven by an immediate member of the owner's family. *Id.* Similarly, Michigan statutory law imposes liability upon the owner of an automobile for personal injuries caused by the negligence of a person using the automobile with the owner's "express or implied consent or knowledge." MICH. COMP. LAWS § 257.401. Decisions under the Michigan Auto Owner's Liability Act read the coverage of the statute broadly, and hold that an owner who willingly surrenders control of his vehicle to others consents to the risks attendant upon his surrender of control, regardless of restrictions against further delegation. *See, e.g., Cowan v. Strecker*, 229 N.W.2d 302, 304-05 (Mich. 1975). Consequently, once an owner relinquishes control of his automobile to another person, he is liable under the owner's statute, even though he has instructed the permittee not to let anyone else use the automobile. Although it is not directly at issue in this contract litigation, the Michigan courts would probably find that Lindsey Cavanaugh operated the Sea-Doo with Mark Hoofman's "consent" for purposes of the owner's statute. MICH. COMP. LAWS § 324.80207. Plaintiff argues that the result should be the same under the policy of watercraft insurance involved in this case.

The implicit assumption underlying plaintiff's argument is that the Michigan courts would construe the term "permission" in an insurance policy with the term "consent" in the owner's statute. Plaintiff argues that the Michigan courts would consider the two concepts to be *in pari*

*materia*, such that the insurance policy should be deemed to cover anyone who falls within the ambit of the owner's statute.  Plaintiff cites no Michigan case supporting this proposition, and it is doubtful that the Michigan courts would equate the two concepts.  In *Cowan* and cases like it, the Michigan courts have expressly given the statute a broad reading in order to effectuate the presumed intent of the Legislature to impose liability upon the owner for all foreseeable uses of the automobile.  "The purpose of the statute is to place the risk of damage or injury upon the person with the ultimate control of the vehicle . . . .  The statute makes the owner liable, not because he caused the injury, but because her permitted the driver to be in a position to cause the injury."  *Roberts v. Posey*, 194 N.W.2d 310, 312 (Mich. 1972).  By contrast, when construing a policy of insurance, the Michigan courts are not attempting to effectuate a legislative mandate, especially where, as here, insurance coverage is not statutorily required.  The Michigan courts have not equated the concept of "consent" under the owner's statute with "permission" under insurance policies and, given the discreet functions served by the statute and policies of insurance, it is not likely that they would do so.

This court concludes that Michigan would join the great majority of states in holding that Lindsey Cavanaugh was not a "insured person" under defendant's watercraft policy, because she was not operating the insured watercraft with the prior permission of Mark Hoofman or his spouse. Defendant is therefore entitled to judgment in its favor as a matter of law.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment will be denied, defendant's motion will be granted, and a declaratory judgment will be entered on behalf of defendant declaring that Lindsey Cavanaugh was not an insured person under defendant's watercraft policy.

Dated:   August 30, 2007                  /s/  Joseph G. Scoville
                                          United States Magistrate Judge

-12-